IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:20-CT-03140-M

TERRY L. LANGFORD, )
 )
          Plaintiff, )
 )
v. ) **ORDER**
 )
McCOY, et al., )
 )
          Defendants. )

This cause is before the court on defendants' pending motion to dismiss, Mot. [D.E. 25]. For the reasons discussed below, the court grants the motion.

Procedural History:

On October 10, 2019, Terry L. Langford ("plaintiff"), an inmate at F.C.I. Butner ("Butner") proceeding *pro se* and without prepayment of fees, filed this complaint in the United States District Court for the Middle District of North Carolina pursuant to Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971) ("Bivens"). See [D.E. 1, 2, 11].

Plaintiff alleges that, while working at Butner inmate Food Service, the A.M. shift supervisor, defendant McCoy, asked if plaintiff was gay. Compl. [D.E. 2] at 12–13. After plaintiff replied affirmatively, McCoy then "began a series of attacks against [plaintiff] to include inciting other detail inmates to join McCoy in being verbally abusive toward [plaintiff] (with the promise of special favors for doing so) by commenting about [plaintiff's] sexuality, gender identity, . . . [and] discussing [plaintiff's] sexuality with other inmates . . . ." Id. at 13. Plaintiff raised concerns about McCoy with a counselor and filed a formal grievance. Id. Plaintiff asserts that McCoy retaliated and, together with defendants Burke and Paluch, filed false reports against plaintiff and

removed plaintiff from this work detail for discriminatory reasons. Id. at 15–16. Plaintiff seeks injunctive and declaratory relief, as well as compensatory and punitive damages. Id. at 16.

On April 15, 2020, the action was transferred to this court. See [D.E. 5, 6].

On November 13, 2020, the court denied plaintiff's motion to suspend collection of fees, conducted its initial review of the complaint, and allowed the action to proceed. Order [D.E. 7].

On April 16, 2021, defendants filed the instant motion to dismiss, Mot. [D.E. 25] (citing Fed. R. Civ. P. 12(b)(1), (6)), and a memorandum in support, Defs.' Mem. [D.E. 26].

Pursuant to Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975) (per curiam), the court notified plaintiff about defendants' motion to dismiss, the consequences of failing to respond, and the response deadline. [D.E. 27].

On June 30, 2021, plaintiff filed a response in opposition. Pl.'s Resp. [D.E. 30].

On July 14, 2021, defendants filed a reply. Defs.' Reply [D.E. 31].

Legal Standard:

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) tests subject-matter jurisdiction–a court's "statutory or constitutional power to adjudicate the case." Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 89 (1998) (emphasis omitted). "[T]he party invoking federal jurisdiction bears the burden of establishing its existence." Id. at 104.

When considering a motion to dismiss for lack of subject-matter jurisdiction, the court may consider evidence outside the pleadings without converting the motion into one for summary judgment, but the court "should apply the standard applicable to a motion for summary judgment, under which the nonmoving party must set forth specific facts beyond the pleadings to show that a genuine issue of material fact exists." Richmond, Fredericksburg & Potomac R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991) (citation omitted).

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the complaint's legal and factual sufficiency. See Ashcroft v. Iqbal, 556 U.S. 662, 677–80 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–63 (2007); Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 566 U.S. 30 (2012). To withstand a motion to dismiss under Rule 12(b)(6), a pleading "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678 (quotation omitted); see Twombly, 550 U.S. at 570; Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008).

When considering a motion to dismiss, the court need neither accept a complaint's legal conclusions drawn from the facts, see Iqbal, 556 U.S. at 679, nor "accept as true unwarranted inferences, unreasonable conclusions, or arguments," Giarratano, 521 F.3d at 302 (quotation omitted). The court, nevertheless, presumes as true the factual allegations in the complaint and construes these allegations in the light most favorable to the non-moving party. Albright v. Oliver, 510 U.S. 266, 268 (1994); Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009). Further, although the court liberally construes *pro se* filings, see Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam); Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978), all complaints must contain "more than labels and conclusions," Twombly, 550 U.S. at 555.

## Arguments:

Defendants argue, among other things, that, by failing to appeal to the Office of General Counsel, plaintiff likewise failed to properly exhaust available Bureau of Prisons ("BOP") administrative remedies before filing the instant action. See Defs.' Mem. [D.E. 26] at 9–13. Defendants note: plaintiff initiated informal grievances on January 23 and February 6, 2018; plaintiff left Butner on a federal writ on February 21, 2018, and did not return until July 2, 2018; a July 30, 2018, response to the informal grievance denied plaintiff's request to be placed back in

Food Service; on July 31, 2018, plaintiff filed a formal grievance as to removal from Food Service; on August 10, 2018, the warden responded, addressing a grievance regarding plaintiff's removal from Food Service and a claim about inadequate performance pay for time employed in Food Service; plaintiff appealed the warden's response; on September 18, 2018, the Regional Office allowed plaintiff to refile the appeal within ten days; on September 26, 2018, the Regional Office received plaintiff's resubmitted appeal; on March 3, 2019, after purportedly not receiving responses from the Regional Office, plaintiff sought assistance from a Member of Congress; the Congresswoman informed plaintiff that the Regional Office had sent responses on October 11 and 26, 2018; thereafter, plaintiff did not appeal to the Office of the General Counsel (or, the "Central Office"), but instead filed this complaint. Id. at 3–5 (citing Compl. [D.E. 2] at 13–14, 17–39).

In response, plaintiff asserts, among other things, that, after receiving no response to grievances, plaintiff obtained "a U.S. Congressional inquiry requesting a response/responses to those unanswered grievances." Pl.'s Resp. [D.E. 30] at 1–2. Plaintiff contends an administrative agency's failure to respond to a grievance "is equal to not providing access to a grievance program and therefore is considered waived by that agency [sic]." Id. Although the meaning is somewhat unclear, plaintiff appears to assert that the BOP's Administrative Remedy Process requires the BOP to respond to grievances automatically such that requiring plaintiff to contact the Regional Office after failing to receive a response would create an "additional discretionary step." Id. at 3. Thus, plaintiff contends, all administrative remedies were successfully exhausted. Id. at 4.

In reply, defendants note, among other things, the parties agree that plaintiff failed to appeal relevant grievances to the General Counsel. Defs.' Reply [D.E. 31] at 3. Defendants argue that, although plaintiff appears to believe an agency's apparent failure to respond at one step of the administrative remedy process constitutes a "waiver," this is incorrect. Id. Rather, although the

relevant "regulatory scheme contemplates automatic responses to grievances without inmate requests for response, the regulations specifically provide for continuation through to the next level when there is no response[,] or the inmate does not receive a response[,] so that inmates can proceed through the levels to the regulation-mandated completion." Id. Thus, although plaintiff was entitled to consider the purported non-receipt of a response from the Regional Office as a denial, proper exhaustion of administrative remedies still required that plaintiff appeal to the General Counsel, noting the asserted non-receipt of a response from the Regional Office. Id. at 4.

Discussion:

The Prison Litigation Reform Act ("PLRA") states, in relevant part, "[n]o action shall be brought with respect to prison conditions under section 1983 . . . by a prisoner . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); see Ross v. Blake, 578 U.S. 632, 638–39 (2016); Jones v. Bock, 549 U.S. 199, 211 (2007) ("[E]xhaustion is mandatory under the PLRA and . . . unexhausted claims cannot be brought in court.").

"[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002); see also Steele v. Fed. Bureau of Prisons, 355 F.3d 1204, 1214 (10th Cir. 2003) (finding the PLRA exhaustion requirement applicable to Bivens claims), abrogated on other grounds by Jones, 549 U.S. at 199.

Successful exhaustion of administrative remedies "means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." Woodford v. Ngo, 548 U.S. 81, 90 (2006) (citation, alteration, and internal quotation marks omitted); see also Booth v. Churner, 532 U.S. 731, 741 (2001) (noting that the PLRA requires exhaustion of administrative remedies "regardless of the relief offered through administrative procedures.").

5

A plaintiff's failure to exhaust available administrative remedies is an affirmative defense that defendants generally must plead and prove. See Jones, 549 U.S. at 216–17; Wilcox v. Brown, 877 F.3d 161, 167 (4th Cir. 2017); Custis v. Davis, 851 F.3d 358, 361–63 (4th Cir. 2017).

The BOP has a multi-tiered Administrative Remedy Program. See 28 C.F.R. §§ 542.10, et seq. An inmate first seeks to informally resolve the complaint by filing Form BP-8 and, if the matter cannot be resolved informally, the inmate must file a formal written "Administrative Remedy Request" (Form BP-9) within twenty days following the date on which the basis for the complaint occurred. 28 C.F.R. §§ 542.13, 542.14(a). An inmate then may appeal the decision to the Regional Director within twenty days of the date of the Warden's BP-9 response by filing Form BP-10. 28 C.F.R. § 542.15. Finally, the inmate may appeal the BP-10 decision to the General Counsel within thirty days of the Regional Director's response by filing Form BP-11. Id.

Here, the BOP's Administrative Remedy Program was incomplete because plaintiff did not file a BP-11, *i.e.* an appeal of a Regional Office denial to the General Counsel, before initiating this action on October 10, 2019. See Compl. [D.E. 2] at 17–18 (informal grievance, hand-dated Jan. 23, 2018, and received on Feb. 2, 2018, alleging harassment by McCoy, noting plaintiff was given a BP-9 on Aug. 1, 2018); id. at 19 (undated response to plaintiff's Feb. 2, 2018, informal grievance finding plaintiff's work duties were changed because of work-related issues, not due to LGBT beliefs); id. at 20–21 (Feb. 6, 2018, informal grievance alleging retaliation and continued harassment by McCoy, noting plaintiff given a BP-9 on July 30, 2018); id. at 22 (undated response to Feb. 6, 2018, informal grievance noting plaintiff was removed from Food Service due to an incident report on Jan. 25, 2018); id. at 23 (BP-9, received on Aug. 2, 2018, refuting the informal response finding plaintiff was removed from Food Service due to an incident report and requesting missing pay); id. at 24 (Aug. 13, 2018, receipt of the Aug. 2, 2018, BP-9); id. at 25 (Warden's

6

Aug. 10, 2018, response to Aug. 2, 2018, BP-9 finding plaintiff was terminated from Food Services due to a Jan. 25, 2018, incident report, but a pay correction was appropriate); id. at 26–27 (BP-9, received on Aug. 9, 2018, refuting the informal response finding plaintiff's work duty was changed due to work performance, not harassment); id. at 28 (Warden's Aug. 21, 2018, response to Aug. 9, 2018, BP-9, finding plaintiff received counseling solely due to work performance and plaintiff had admitted not hearing the supervisor make derogatory remarks or threats as to LGBT status); id. at 29 (hand-dated Aug. 24, 2018, BP-10 as to removal from work detail); id. at 30 (Regional Office's Sept. 10, 2018, rejection notice of appeal received on Sept. 4, 2018, for failure to submit on the proper form, and allowing 10 days to resubmit the appeal); id. at 31 (Regional Office's Oct. 2, 2018, acceptance of BP-10 as to discrimination and job assignment, noting submission on Sept. 26, 2018, and response due Oct. 26, 2018); id. at 32–33 (hand-dated Aug. 29, 2018, BP-10); id. at 34 (Regional Office's Sept. 19, 2018, acceptance of BP-10 as to harassment by staff, noting submission on Sept. 11, 2018, and a response due Oct. 11, 2018) id. at 35–37 (plaintiff's Mar. 3, 2019, letter to Congresswoman Elanor Holmes Norton complaining about non-receipt of Regional Office responses); id. at 38–39 (Regional Office's May 6, 2019, response to Congresswoman Elanor Holmes Norton noting that plaintiff's Sept. 11, 2018, Administrative Remedy Appeal was accepted, investigated, and denied and sent on Oct. 16, 2018, and that plaintiff's Sept. 26, 2018, Administrative Remedy Appeal was accepted, investigated, and denied and sent on Oct. 26, 2018).

To the extent plaintiff instead contends that this failure to fully exhaust administrative remedies may be excused due to plaintiff's purported non-receipt of Regional Office responses, this is incorrect. See 28 C.F.R. § 542.18 (providing, if an inmate does not receive a response from the Warden, Regional Director, or General Counsel within the allotted time frames, including extensions of time, the inmate may consider the absence of a response to be a denial at that level).

7

Plaintiff's apparent misunderstandings about the BOP's Administrative Remedy Program likewise provide no grounds for waiving the exhaustion requirement. See Ross, 578 U.S. at 641 ("The PLRA's history (just like its text) thus refutes a 'special circumstances' exception to its rule of exhaustion."); see also Burgess v. Igboekwe, No. 5:12-CT-3017-F, 2012 WL 6054009, at *5 (E.D.N.C. Dec. 5, 2012) (noting various courts have rejected as an excuse for failure to exhaust inmates' claims alleging ignorance of grievance procedure "due to administrators' purported failures," and finding that an inmate's failure to exhaust administrative remedies also is not excused even when the inmate claims he "had not been informed how to file a grievance or given an inmate handbook describing the procedure" (citations omitted) (collecting cases)).

Further, plaintiff fails to plausibly allege that prison grievance procedure was "unavailable" within the meaning of Ross, 578 U.S. at 643–44; see Graham v. Gentry, 413 F. App'x 660, 663 (4th Cir. 2011) ("[I]n order to show that a grievance procedure was not 'available,' a prisoner must adduce facts showing that he was prevented, through no fault of his own, from availing himself of that procedure."); see also Iqbal, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); Twombly, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level.").

To the extent plaintiff successfully exhausted administrative remedies as to these claims after the complaint was filed, see Pl.'s Resp. [D.E. 30] at 3; Pl.'s Resp. Attach. [D.E. 30-1] at 1–2 (Sept. 16, 2019, BP-10); id. at 3 (Regional Office's Oct. 30, 2019, response denying the appeal); id. at 4 (Nov. 17, 2019, BP-11 appealing to the Central Office), plaintiff may not avoid the PLRA's exhaustion requirement either by exhausting after filing or by amending the complaint to show exhaustion while the action is pending, see Johnson v. Jones, 340 F.3d 624, 627–28 (8th Cir. 2003) ("[P]ermitting exhaustion *pendente lite* undermines the objectives of section 1997e(a)"); Hayes v.

8

Case 5:20-ct-03140-M   Document 33   Filed 12/09/21   Page 8 of 9

Stanley, 204 F. App'x. 304, 304 n.1 (4th Cir. 2006) (per curiam) (unpublished) (finding failure to exhaust administrative remedies may not be cured by amending a complaint).

Thus, because defendants have pleaded and proved that plaintiff failed to exhaust available administrative remedies before filing this action, dismissal without prejudice is appropriate. See Jones, 549 U.S. at 211; Woodford, 548 U.S. at 85; Booth, 532 U.S. at 741; Custis, 851 F.3d at 361; see also Ford v. Johnson, 362 F.3d 395, 401 (7th Cir. 2004) (noting courts typically dismiss without prejudice when an inmate files suit prior to exhausting administrative remedies).

In light of this dismissal, the court need not address defendants' remaining arguments.

## Conclusion:

For the reasons discussed above, the court: GRANTS the motion to dismiss [D.E. 25]; DISMISSES WITHOUT PREJUDICE the complaint [D.E. 2] for failure to exhaust available administrative remedies; and DIRECTS the clerk to close the case.

SO ORDERED. This 9th day of December 2021.

*Richard E Myers II*
RICHARD E. MYERS II
Chief United States District Judge